UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:05CV-200-R

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 72D                      PLAINTIFF

v.

POLYONE CORPORATION                                                DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on cross-motions for summary judgment (Dkt. Nos. 10 and 11) of the parties. Responses and replies were filed (Dkt. Nos. 16, 18, 19, 23), and this matter is now ripe for decision. For the following reasons, Plainitff's Motion for Summary Judgment will be **GRANTED** and Defendant's will be **DENIED**.

## BACKGROUND

This case arises out of a dispute between PolyOne Corporation ("PolyOne") and two of its employees, Lester Jewell and Dennis Juliot, both members of the United Food and Commercial Workers, Local 72d labor union ("Union") over the provision of long-term disability benefits ("LTD benefits") under the Collective Bargaining Agreement ("CBA") signed between PolyOne and the Union and effective June 1, 2001. Specifically, Mr. Jewell and Mr. Juliot seek to force PolyOne to arbitrate a claim arising out of their denial of LTD benefits. PolyOne argues that their grievances are not arbitrable because they do not arise under the CBA, but instead under the terms of the insurance plan ("Plan") purchased by PolyOne. Apparently, Mr. Jewell and Mr. Juliot applied for and were denied benefits because they failed to meet the "Active Work Requirement" of the plan. The Union frames the issue as a question of whether

1

the Plan itself satisfies the requirements of the CBA; the Company argues that it is an issue of Plan interpretation and therefore not an issue appropriately resolved by arbitration.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

In the summer of 2001, PolyOne was undergoing a company-wide downsizing; in order to keep the Louisville plant open, PolyOne decided to negotiate a new collective bargaining agreement ("CBA") with its Union-represented employees there. Part of that agreement included a change in the benefits provided to the Union-represented employees; essentially, they were to change over to the benefits plan already in place for the Louisville plant's salaried employees. In order to effect the change in the plan, PolyOne simply altered the definition of the term "Member" in the existing benefits plan to include the Union-represented employees of the Louisville plant. On May 29, 2001, PolyOne submitted its "Final Offer" to the Union, which the Union ultimately ratified. On June 1, 2001, the CBA came into effect.

Appended to and incorporated by reference into the CBA was a summary of benefits entitled "Benefits At A Glance For Louisville Wage." It is a four-page document which is essentially a table that lists the types of benefits (including, relevant here, long-term disability benefits), describes the benefits, and describes how an employee participates in that particular aspect of the benefits package (i.e., annual enrollment periods, etc.). With regard to long-term disability benefits, it states that "[t]he plan replaces 60% of your eligible pay if your disability continues more than 180 days. Payments may be reduced by other sources of income such as Worker's Compensation and Social Security benefits due to your disability." (Collective Bargaining Agreement, Exhibit B to Affidavit of Paul H. Reger, Dkt. # 22). In the "How To Participate" section, it says: "Basic coverage is automatically provided at no cost when you are hired. You may elect the annual adjustment option when you are hired or during annual enrollment. A pre-existing condition provision applies to this plan." (*Id.*)

When the Union filed its grievances on behalf of Mr. Juliot and Mr. Jewell, it relied upon (and attached to those grievances) a document which the parties have called the "Fick Summary." The Fick Summary is a four-page table similar to the "Benefits At A Glance" document discussed above, except that it purports to compare the amount of such benefits received by PolyOne employees before and after the adoption of the collective bargaining agreement. The Fick Summary was not attached to the CBA, nor was it incorporated by reference. It says: "This document serves as a brief summary of plan provisions. The written offer and the terms of the plan govern." The Fick Summary, so named because it was prepared by Robert Fick, a third party benefits consultant, "was a wholly gratuitous effort to provide a 'snapshot' comparison between the fringe benefit package under the expiring CBA and the then-current salaried benefits to which bargaining unit employees would be converting." (Affidavit of David P. Hiller, Attachment # 1 to Dkt. # 15, at 2). With regard to the provision of long-term disability benefits, the "Benefits At A Glance" and the Fick Summary are substantially the same; they state that the LTD plan pays 60% of a disabled worker's eligible earnings, subject to offsets for compensation received by the employee in the form of workers' compensation, Social Security benefits, etc.

The Union and PolyOne apparently differ in their understanding of the agreement not as to the amount of benefits provided under the Plan, but of the limitations on eligibility for those benefits. The Union submits the affidavit of Edwin Blake, a PolyOne employee and member of the Union's bargaining committee during the 2001 negotiations. (Attachment # 1 to Dkt. # 18). Mr. Blake avers that:

> During the discussions on disability benefits during [the 2001 CBA] negotiations, there was never any discussion that an individual must be actively at work on any specific date

>in order to be eligible for the benefits. The only discussion concerned the amount of benefits that would be received. We always discussed benefits rather than coverage. It was our understanding that the employer was agreeing to provide the increased benefits to all bargaining unit members hired by May 31, 2001, without regards to whether or not they were at work on any specific date subsequent thereto.

(*Id.* at 1). Mr. Blake attached a copy of one page of the Fick Summary to his affidavit, and stated in the affidavit that it "was attached to the collective bargaining agreement and encompasses the understanding of the Union." (*Id.*).

This difference is the basis for the Union's argument that PolyOne should be forced to arbitrate the grievances of Mr. Juliot and Mr. Jewell. The Union does not argue that Mr. Juliot and Mr. Jewell somehow *do* meet the requirements for LTD benefits under the plan; rather, it argues, the plan itself is insufficient to meet the bargained-for promises made by PolyOne during the course of negotiations.

The parties agree that the principles from the "Steelworkers Trilogy"[1] govern this action. The Sixth Circuit Court of Appeals summarized them in *United Steelworkers v. Mead Corp.*, 21 F.3d 128 (6th Cir.1994):

>(1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability

---

[1] *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

"particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

*Id.* at 131 (citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-51, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

Under this test, the grievances are arbitrable. It appears from the evidence before the Court that the Union's claim has very little, if any, merit in light of the circumstances under which it agreed to the change in insurance coverage (i.e., the fact that the union employees were simply to be added to an existing plan which contained the active work limitation). However, the merit or lack of merit of the claim is not relevant to the interpretation of the arbitration clause itself. The arbitration clause is broad. It provides, in relevant part, a grievance and arbitration procedure for "an employee [who] considers that he has any grievance, or that any provision of this Agreement has been violated..." (CBA, Attachment # 4 to Dkt. # 22). The exclusion for "questions arising in the administration, interpretation, and application" of the plan does not apply to the Union's assertion that the plan does not satisfy the bargained-for requirements of the CBA. Therefore, and in light of the strong presumption of arbitrability prescribed by the *Steelworkers* Trilogy, the Court must enforce the arbitration clause and grant Plaintiff's motion for summary judgment.

## CONCLUSION

For the reasons outlined above, this Court concludes that Plaintiff is entitled to summary judgment.

An appropriate order shall issue.